# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Big Time Plastering, Inc., Promenade at Sandhill Condominium Association, Inc., M. B. Kahn Construction Co., Inc., Kahn Development Company, Village at Sandhill, LLC and VAS Condominium, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>Gemini Insurance Company, Clarendon National Insurance Company as Successor to Sussex Insurance Company,<br><br>Defendants. | Case No. 3:19-cv-02324-SAL<br><br>**PLAINTIFF, BIG TIME PLASTERING, INC. 'S RESPONSE TO DEFENDANT GEMINI INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT {ECF 180}** |

Plaintiff Big Time Plastering, Inc. ("Big Time"), by and through its undersigned counsel, submits the following response to Defendant Gemini Insurance Company's ("Gemini") Motion for Summary Judgment.

Gemini has moved for summary judgment and a declaration that no coverage of any nature is afforded Big Time under the two Gemini policies. Gemini also asks for a declaration that it has no duty to defend due to there being no coverage. Gemini has made no effort to justify its refusal to defend grounded in South Carolina law requiring a defense if there is any possibility of coverage, and recognizing that the duty to defend is broader than the duty to indemnify. There can be a duty to defend where the claim is ultimately found not to be covered.

Gemini has offered no justification for its admitted failure to assess the duty to defend as required by South Carolina law. It offered no justification for not assessing the pleadings as determinative of the duty to defend.

Gemini has bet all on one roll of the dice. Gemini must wipe out all coverage based on the two endorsements referenced, and as a result justify its refusal to defend. If any possibility of coverage is found to exist in reviewing any of these endorsements, Gemini will have breached its duty to defend. Gemini offers no justification for its refusal to defend other than the conclusion it reaches about the possibility of coverage on the endorsements. It offers no excuse for not having analyzed the allegations of the pleadings and offered a defense based on the allegations and not solely on the endorsements. Gemini approached the duty to defend analysis backwards. Gemini concluded there was no duty to defend when it found a possibility of there being no coverage.

Gemini does not suggest that there are any grounds to conclude there is no coverage based on any part of the policy other than the endorsements and the insuring clause. It can be concluded, based on the case law in Big Times' brief and the absence of any assertion by Gemini, that the Declarations page and the 16 page CGL coverage form provides coverage as a matter of law. Therefore, Gemini must show that one or more of the cited endorsements is unambiguous and is effective to reach back and take away all coverage admittedly granted by the initial portions of the policy. Gemini will have to justify expressly and unequivocally granting coverage in the CGL coverage form and then asking to take away coverage by hidden, contradictory and ambiguous endorsements.

Gemini as a carrier selling coverage, can insure what it chooses to insure but can do so only by clear and unambiguous language in conformity with South Carolina law, and by clearly telling the insured what is and is not being purchased. Gemini's policies fail to accomplish this requirement, and coverage granted by Gemini's polices must be decided based on an interpretation favorable to the insured and favorable to inclusion of risk and not exclusion of risk. The interpretations suggested by Gemini, formulated only because they hope to justify their denial of

2

a defense based on a denial of coverage, fail as a matter of law if there are alternate interpretations that favor the insured and inclusion of risk, not exclusion. If any portions of any of the four buildings have the possibility of coverage, all claims must be defended.

## **AMBIGUITY THROUGH INTERNAL INCONSISTENCY**

Gemini asks the Court to be guided by *Isle of Palms Pest Control v. Monticello Ins. Co.*, 459 S.E.2d 318 (1994). This opinion correctly holds that an insurer cannot by an exclusion delete coverage that is specifically granted elsewhere in the policy. An insurer can start with a broad, general grant of coverage, as is done in the insuring clause of the Gemini policies, and then pare down that general grant of coverage by eliminating specific risks.

The carrier cannot however, treat a specific risk in contradictory terms. The contradictory terms create an "internal inconsistency" which has to be resolved. Gemini does not have the right to create the inconsistency and then ask for the benefit.

*Isle of Palms* states the following:

> The internal inconsistency created by an exclusion which purports to bar coverage for claims arising out of the very operation sought to be insured renders the policy ambiguous, and we must resolve that ambiguity in favor of coverage. (ambiguity in exclusion should be resolved in favor of coverage). Accordingly, we refuse to interpret the exclusion so as to bar claims for property damage caused by Isle of Palms' negligence in performing exterminating services.

Id. at 19.

Gemini specifically represents to Big Time that coverage is afforded for claims of progressive damage by using the definition of occurrence stating that:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

3

South Carolina opinions have held that this definition obligates the insurer to cover progressive damage. *Harleysville Group Insurance v Heritage Communities, Inc.*, 803 S.E.2d 288 (2017). Gemini also specifically represents that there is no retroactive date.

Gemini, after representing that progressive and continuous damage is covered without a retroactive date, uses the time honored method of bait and switch, by creating an exclusion that excludes progressive and continuous damage and imposes a retroactive date that is called the policy inception date. In addition, Gemini uses this endorsement to opt out of its place in the time on risk allocation of its share of the damages. Time on risk imposes on each insurer the damages that occur only in its policy period. Gemini seeks to avoid not only damage prior to its policy period, but damages in its policy period.

Completed operations is a vital coverage for any contractor, and to attempt to exclude this coverage, or pare it down to the minimum, by using an exclusion called pre-existing injury, is not only harmful but prejudicial. It clearly meets the definition of barring coverage "for claims arising out of the very operation sought to be insured renders the policy ambiguous."

*Isle of Palms* characterizes an internal inconsistency created by an exclusion as an ambiguity that has to be resolved in favor of the insured. This remedy is not limited to instances where all coverage is precluded. The Pre-existing damage endorsement, and any other inconsistencies so created are resolved in favor of coverage.

Gemini's use of the preexisting or continuous exclusion results in directly contrary terms applied to the same circumstance, and is deemed ambiguous and is resolved in favor of Big Time.

Big Time adopts Kahn Development Company, Village at Sandhill, LLC and VAS Condominium, LLC's response to Gemini's motion including topics 1 through 5. Big Time asks

4

the Court to particularly review the discussion regarding *contra proferentum* in topics 2 and 3 and the discussions related to only 20 units showing damage in 2014.

Big Time also relies upon its Memorandum and Exhibits submitted in support of Big Time's Motion for Partial Summary. [ECF 179].

**KNOWN LOSS CONDITIONS IN THE INSURING AGREEMENT**

Prior to the insurance industry's addition of paragraphs 1 (b) through (d) to the insuring agreeemnt in ISO policies issued after 2001, there was a commonly understood and commonly applied common law premise referred to as the "known loss" doctrine. The Fourth Circuit in *Stonehenge Engineering Corporation vs. Employers Insurance of Wausau*, 201 F.3d 296 (4th Cir. 2000) formulated and set forth a known loss doctrine that would govern an unsettled interpretation of CGL policies, and that is what level of knowledge on the part of an insured is sufficient to preclude the insured from buying coverage for an event and circumstances that are known at some level, and may later become a formal claim. The insurance industry wanted to avoid issuing a policy that covered a loss already incurred. The issue must be decided fairly to both sides, and recognizing that all insurance policies are adhesion contracts. At what level of knowledge is it fair to preclude coverage for an insured where the insured had some knowledge of events that may or may not later become an asserted claim for which coverage is sought.

*Stonehenge* established a test or standard of knowledge known to the insured that precluded the insured from buying coverage to insure the consequences of the known event. The Fourth Circuit formulated this standard as a fair to both sides analysis.

The standard set forth in *Stonehenge* is as follows:

> Because the parties are in agreement that South Carolina's substantive law controls our resolution of this issue, we assume the same *arguendo*. Furthermore, because no South Carolina case exists

5

>> applying or addressing the known loss doctrine, we will assume, as the parties appear to, that the Supreme Court of South Carolina would recognize the existence of the known loss doctrine as part of South Carolina's common law in its most commonly articulated form.
>
> ….
>
> Here, the insurable risk of loss at issue is the risk of Stonehenge's liability to the Owners Association for property injury. Therefore, the question before us is whether the evidence, when viewed in the light most favorable to Wausau, establishes that Stonehenge (1) actually knew that it was legally liable for the property damage claimed by the Owners Association at the time one or more of the Three Wausau Policies took effect or (2) knew that such liability was substantially certain to occur.

Id at 302.

The insurance industry obviously believed that "liability was substantially certain to occur" was an unfair standard as it amended the ISO standard CGL policy by including paragraph's b (3), c and d. The policy conditions are quoted on page 7 of this brief.

Gemini asserts that Big Time "knew" sufficient information prior to the policy to preclude coverage for the claims first formally made against it in July 2016. What constitutes sufficient information to deny an insured coverage purchased is still subject to dispute, interpretation and ambiguity when considered in relation to the known loss conditions in the insuring agreement. These policies continue to fail to adequately define the level of knowledge that has to be shown to preclude coverage, and the insuring clause must be interpreted favorable to the insured. The insuring clause simply states that the insured "*knew* that the…property damage had occurred."

The initial problem is to determine how to assess the question of sufficient information when there is a valid and applicable Fourth Circuit opinion setting forth a common law standard that is supported by other opinions from other Courts that is materially different from the policy

6

conditions in the insuring clause.[1]  The insurance industry has added the quoted policy language that presumably sets forth a more lenient (for the carrier) standard of proof sufficient to void coverage.  In doing so it has not defined the term "knew" nor has it defined what information an insured must be aware of to deny coverage.  Ignoring the policy language in favor of the *Stonehenge* standard is likely improper.   It would be proper however, to interpret the language, the undefined terms and standard of proof, consistent with *Stonehenge*, given the clear direction in South Carolina Opinions to interpret in favor of the insured and in accordance with common law legal principals.

The next step is to evaluate the nature and extent of information the insured received, and not the answers the insured gave to deposition questions posed 8 years later.

Gemini relies on one communication to Big Time, and that is a letter of April 18, 2012 addressed to Big Times insurance agent, and "to whom it may concern" to establish that Big Time "knew."  Exhibit 1, Letter of April 18, 2012. Gemini has shown no other written or verbal communication to Big Time to imply sufficient knowledge to Big Time to deny it the coverage it purchased.  This letter is from M.B. Kahn.  Kahn did not then nor has it ever owned the buildings and if there was then a claim to be asserted, it would come from the owner, VAS Condominium and VAS Retail.   The letter references water infiltration issues, but says "the causes are yet to be determined."  The letter asks for "cooperation and assistance in identifying the sources".

Kahn says that it expects you "to resolve any leaks that are found to be your companies responsibility."

This letter does not refer to Big Time by name, and refers to a "potential claim".

---

[1] *Montrose Chemical Corporation of California v. The Superior Court of Los Angeles County*, 6 Cal.4th 287 (1993).

After this letter, Kahn went to the buildings and investigated the leaks. How many leaks are not known. The consequences of the leaks is not known. Big Time was asked to come to the buildings to patch the stucco that Kahn cut away to evaluate the leaks. It was not asked to remedy or correct its prior work. Kahn agreed to pay Big Time $30,000 for the work to replace the stucco Kahn cut away. Big Time did not install flashing or sealants and this work would have been the responsibility of others.

Kahn did not ask Big Time to repair the stucco as a responsible party, and by paying Big Time, it is obvious Kahn did not believe after it had investigated the leaks that Big Time had any responsibility. The same conclusion was reached by Big Time. Asking Big Time to install stucco for compensation hardly suggests a future claim or future litigation.

Kahn did not ever follow up with Big Time to discuss the results of their investigations or to assert they concluded Big Time was responsible.

The insurer's attempt to broaden the "known loss" defense was attempted by adding new conditions to the insuring agreement. The insuring agreement is the first step in evaluating a claim, and determining if there is a defense and indemnity owed under the policy. The insuring agreement is not in the policy to assess general information that an insured may learn of, nor as a way to deny coverage by asserting a standard extremely unfavorable to the insured. Showing an absence of knowledge of the circumstances is the last element the insured has to satisfy, along with property damage, legal liability, and occurrence, to show that the insuring clause is satisfied and to turn the consideration of exclusions over to the insured, who has the burden of proof in regard to exclusions.

Paragraphs d (1), (2) and (3) state:

> d.     "Bodily injury" or "property damage" will be deemed to have been known to have occurred

8

>
> at the earliest time when any insured listed under Paragraph 1. of Section II- *Who Is An Insured or any* "employee" *authorized by you to give or receive notice of an "occurrence" or claim:* [emphasis added].
>
> (1) Reports all or any part, or the "bodily injury" or "property damage" to us or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Paragraph 1 is inapplicable.

Paragraph 2 specifically refers to having received a *written or verbal claim.* [Emphasis added].

Paragraph 3 references receipt of knowledge by any other means.

Paragraph e states:

> e.   *Damages because of "bodily injury" include damages claimed by any person or organization* for care, loss of services or death resulting at any time from the "bodily injury".* [Emphasis added].

Paragraph e references bodily injury but does so in relation to "damages claimed."

The only way to interpret the known loss conditions added to the insuring agreement, is to consider all conditions in relation to the purpose of the insuring agreement and not simply information learned with no suggestion that the knowledge will become a claim.

9

The conditions of the insuring agreement are relevant only to claims. No insurer will analyze compliance with the insuring agreement in relation to general information. In the absence of a claim, neither the insured or the insurer will consider the requirements of the insuring agreement.

The insured has to be shown to have had knowledge of circumstances that will become a claim, and liability is substantially certain to occur. Simple knowledge that water damage may be present, without also a recognition by the insured that it is responsible and will be the subject of a claim followed by liability, is not sufficient.

The letter of April 18, 2012 and the circumstances surrounding this letter cannot in any respect be deemed to be a claim or will reasonably lead to a claim and liability against Big Time. These circumstances clearly lead Big Time or any reasonable person to believe there were leaks, M.B. Kahn was investigating, and Big Time was not thought by M.B. Kahn or the Owner to be responsible for the leaks.

Interpreting the policy favorable to the insured, and with deference and guidance given by the common law rule set out by *Stonehenge*, leads to the conclusion that the letter of April 18, 2012 is far short of the burden of proof needed to take away coverage purchased by Big Time.

## **CONTINUOUS OR PROGRESSIVE DAMAGE EXCLUSION**

Big Time incorporates in its response to Gemini's Motion for Summary Judgment the responses of M.B. Kahn, Kahn Development Company, Village at Sandhill, LLC and VAS Condominium, LLC and the argument and documents submitted by Big Time is support of its Motion for Partial Summary Judgment. [ECF 179]. Big Time's motion asked for a declaration finding that this endorsement is ineffective to preclude coverage or to preclude a defense provided

10

to Big Time. Big Time submits the following testimony of Gemini's 30(b)(6) witness in response to Gemini's Motion:

> Q. All right. Now, if it were in a different spot from where it got wet beforehand, when it got wet afterwards during your policy period would it be covered or would it be excluded?
>
> A. I'm sorry. Could you repeat that one?
>
> Q. If it were a different spot. You remember you asked me is it a different spot. If it were a different spot after the first rain which was before the inception date. It rained in a different spot and wet the apartment somewhere else, after your policy incepted would that be included or excluded?
>
> A. That would be included.
>
> Q. All right. Now, if you've got -- so if you've got a leak in Unit 1 of the apartments, and that occurs before the inception date of the policy. And you've got no other leaks, but you get some leaks in Units 2 through 160 after the inception date of the policy, are those included or excluded?
>
> Q. It's in a totally different unit after the inception date.
>
> A. Exclusion states in the event of any claim against the insured's bodily injury, property damage, personal injury, advertising which is or is alleged to be continuing in nature, this policy shall not apply to any such claim if the damage or any portion of it began or was alleged to have begun prior to the date this policy becomes effective.
>
> Q. All right. So for 159 units there was no damage before the policy became effective. So am I correct that any water damage or whatever damage after the inception date of the policy is covered since there was no damage before the inception date of the policy?
>
> THE WITNESS: Could you repeat that?
>
> Q. I'm just reading -- I'm reading what you. If you've got 159 units for which there has been no damage or no claim of damage before the date the policy becomes effective, and they suffer some damage after that, after December the 6th, 2009, is that damage included or excluded?
>
> A. That is included.

11

(Exhibit 2, 30(b)(6) deposition of Gemini, p. 65, l. 13 – p. 67, l. 7).[2]

Gemini's policy started on December 6, 2012. This should be compared to the Partner's report prepared for Wells Fargo prior to the foreclosure in November /December 2014. (Exhibit 3, Partner Property Condition Report dated November 5, 2014 at page 9).

> 4.5 Exterior Walls
>
> The buildings are primarily finished with painted stucco, with limited areas of EIFS accents.
>
> Conditions and Recommendation
>
> - The exterior finish systems appear to be in good condition. Based on its expected useful life, repainting of the stucco and accent EIFS is anticipated during the evaluation period. The cost of this work is included in Table 2. Sealant can be replaced at this time as well.
>
> - Water infiltration was observed and reported in a total of 20 apartment units. The source of the infiltration is still unclear and remains under investigation at this time. Partner has included funds in Table 1 to correct the problem and repair the damage in the affected units.

This investigation into the condition of the property is 2 years after the inception of the Gemini policy. This report notes 14 units unoccupied and 20 units with evidence of water damage. According to the quoted testimony, damage that started in the 142 undamaged units after 2014 would be included, and therefore, covered. Gemini's position is that damage would have to occur before December 6, 2012 to have any impact on coverage. Damage that occurred after December 6, 2012 does not meet the conditions of this endorsement.

---

[2] The entire 30(b)(6) deposition transcript is included in the record as Exhibit 23 to Big Time's Motion for Partial Summary Judgment and Memorandum in Support. [ECF 179].

For duty to defend purposes, and based on the Partners Report, there is certainly the possibility that numerous units had no damage as of December 6, 2012 and there is the possibility of coverage. There is unequivocally the duty to defend. The obligation to indemnify should be deferred until the underlying case is resolved and the questions of when and how much damage occurred is ripe.

The Gemini endorsement should be interpreted consistent with the Clarendon endorsement, that is damage prior to the policy period is not covered, but damage during the policy period is covered. Gemini is attempting to "opt out" of time on risk, and avoid covering damage that occurred during its policy period. To allow Gemini's interpretation to control would validate an endorsement whose sole purpose is to avoid South Carolina opinions interpreting the exact language and coverage terms Gemini included in the policy sold to Big Time.

## **CONDOMINIUM AND RESIDENTIAL EXCLUSION**

The first Gemini policy effective December 6, 2012 contains Endorsements 30 and 32 that Gemini relies on. Endorsement 30 contains a new condominium exclusion. This exclusion is not applicable as "new" should be interpreted as discussed in the response to Defendant Clarendon's motion. In addition there are no condominiums in the property for which coverage is sought. Endorsement 32 references a number of residential projects and the description that ties all of these different projects together is "resident ownership." None of the properties at issue are resident owned and this exclusion does not apply.

Further, Endorsement 32 does not mention apartment complexes as an excluded property.

The January 2014-2015 policy has one endorsement asserted in addition to the continuous or progressive damage endorsement. Endorsement 25 contains a residential project exclusion and excepted from this endorsement is "any apartment building were all units will be rented." The

13

properties at issue in the proceeding are apartments where all units are or will be rented. Therefore, this exclusion does not apply.

## **CONCLUSION**

None of the endorsements promoted by Gemini have any bearing on the coverage granted by the policies and the known loss position fails to establish any right by Gemini to deny a defense or coverage.

Big Time's motion should be granted and Gemini's motion should be denied.

        s/Henry W. Brown
_____
Henry W. Brown        Fed ID No. 1516
John W. Davidson        Fed ID No. 7369
Nexsen Pruet, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC  29202
PHONE:  803.771.8900
FACSIMILE:  803.253.8277
HBrown@nexsenpruet.com
jdavidson@nexsenpruet.com

*Attorneys for Plaintiff, Big Time Plastering, Inc.*

April 30, 2021