IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Big Time Plastering, Inc., Promenade at Sandhill Condominium Association, Inc., M. B. Kahn Construction Co., Inc., Kahn Development Company, Village at Sandhill, LLC and VAS Condominium, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>Gemini Insurance Company, Clarendon National Insurance Company as Successor to Sussex Insurance Company,<br><br>Defendants. | Case No. 3:19-cv-02324-SAL<br><br>**PLAINTIFF, BIG TIME PLASTERING, INC. 'S RESPONSE TO DEFENDANT CLARENDON NATIONAL'S MOTION FOR SUMMARY JUDGMENT [ECF 177]** |

Plaintiff Big Time Plastering, Inc. ("Big Time"), by and through its undersigned counsel, submits the following response to Defendant Clarendon National's ("Clarendon") Motion for Summary Judgment. [ECF 177].

Clarendon has moved for summary judgment and a declaration that no coverage of any nature is afforded Big Time under the three Clarendon policies. Clarendon also asks for a declaration that it has no duty to defend due to there being no coverage. Despite South Carolina law requiring a defense if there is any possibility of coverage, and recognizing that the duty to defend is broader and separate from the duty to indemnify, Clarendon has made no effort to justify its refusal to defend. A duty to defend can exist where the claim is ultimately found to be not covered.

Clarendon has offered in its motion no justification for its admitted failure to assess the duty to defend as required by South Carolina law. It offers no justification for failing to assess the pleadings as determinative of the duty to defend.

Clarendon has bet all on one roll of the dice. Clarendon must wipe out all coverage based on the three endorsements referenced. Proving there is no coverage on any claim in the underlying action is the only possible justification for its refusal to defend. If any possibility of coverage is found to exist in reviewing any one of these endorsements, Clarendon will have breached its duty to defend. It offers no excuse for not having analyzed the allegations of the pleadings and offered a defense based on the allegations and not solely on the endorsements. Clarendon approached the duty to defend analysis backwards. Clarendon concluded there was no duty to defend if there was a possibility of there being no coverage under any endorsement.

Clarendon does not suggest that there are any grounds to conclude there is no coverage based on any part of the policy other than the three endorsements. It can be concluded, based on the case law in Big Times' brief and the absence of any assertion by Clarendon, that the Declarations page and the 16 page CGL coverage form[1] provides coverage as a matter of law. Therefore, Clarendon must show that one or more of the three cited endorsements is unambiguous and is effective to reach back and take away all coverage admittedly granted by the initial portions of the policy. Clarendon will have to justify expressly and unequivocally granting coverage in the CGL coverage form and then asking to take away coverage by hidden, contradictory and ambiguous endorsements.

Clarendon as a carrier selling coverage, can insure what it chooses to insure but can do so only by clear and unambiguous language in conformity with South Carolina law, and by clearly telling the insured what is and is not being purchased. Clarendon's policies fail to accomplish this requirement, and coverage granted by Clarendon's polices must be decided based on an interpretation favorable to the insured and favorable to inclusion of coverage and not exclusion of

---

[1] [ECF 179 Big Time's Memorandum in Support of Motion for Partial Summary Judgment, Exhibit 1, CGL coverage form, p.1 of 16, paragraphs b(1) and (2).

coverage. The interpretations suggested by Clarendon are formulated only because they hope to justify their denial of a defense based on a denial of coverage. If any claims regarding any portions of any of the four buildings have the possibility of coverage, all claims must be defended.

Big Time adopts Kahn Development Company, Village at Sandhill, LLC and VAS Condominium, LLC's response to Clarendon's motion including topics 1 through 5. Big Time asks the Court to particularly review the discussion regarding *contra proferentum* in topics 2 and 3 and the discussions related to only 20 units showing damage in 2014.

Big Time also relies upon its Memorandum and Exhibits submitted in support of Big Time's Motion for Partial Summary Judgment. [ECF 179].

## Condominium or Townhouse Exclusion

Clarendon has this identical endorsement in all three policies. The operative language of the exclusion is "**in connection with any condominium or townhouse project in which there are separate owners of individual units. This applies to New Construction Only.**" [emphasis added].

There are two elements of the exclusion: (1) the project must be condominiums with separate owners of individual units and (2) the project must be new construction. The word "new" is not defined in the policy so the interpretation that is the most insured-friendly, and inclusive, must be chosen. What Clarendon says it secretly intended is irrelevant. The characteristics of a condominium beyond "separate owners of individual units" is also not defined, and South Carolina law provides the standards.

Condominium ownership is created and defined by the South Carolina Horizontal Property Act § 27-31-20(c) which defines condominium ownership as:

> (c) "Condominium ownership" means the individual ownership of a particular apartment in a building and the common right to a share,

3

> with other co-owners, in the general and limited common elements of the property;

S.C. Code § 27-31-30 states the following:

> Whenever a lessee, sole owner, or the co-owners of a property expressly declare, through the recordation of a master deed or lease, which shall set forth in the particulars enumerated in Section 27-31-100, their desire to submit their property to the regime established by this chapter, there shall thereby be established a horizontal property regime.

The conveyance of property into a "regime" does not create condominium ownership. Conveyance into a regime allows subsequent deeds to create condominium ownership defined as having exclusive ownership of the interior of the unit and shared ownership of the common elements. Condominium ownership is created only when a deed is conveyed to a purchaser after the property is deeded into a regime, and the purchaser acquires title as defined. There was never a deed conveying any of the 154 residential units or 8 commercial units.

S.C. Code § 27-31-130 allows the waiver of the regime by the owners and the lender:

> (A)   All the co-owners or the sole owner of the property constituted into a horizontal property regime may waive the regime and regroup or merge the records of the individual apartments with the principal property, if the individual apartments are unencumbered or if encumbered, if the creditors in whose behalf the encumbrances are recorded agree to accept as security the undivided portions of the property owned by the debtors.

The records submitted in support of Big Time's Motion for Summary Judgment [ECF 179] shows unambiguously that the owners of the 162 unconveyed units, VAS Condominiums, LLC and VAS Retail, LLC and the lender, Wells Fargo mutually agreed to abandon, or waive, the condominium structure as to the 154 unsold residential units and the 8 retail units. These units were agreed to be and were operated to be, an apartment complex owned by a single owner with the proceeds of the rent collected to be applied to the expenses of operation and to the construction

loan made by Wells Fargo. (Plaintiff Big Time's Memorandum [ECF 179], Exhibit 16, February 25. 2010 Master Modification Agreement).

While this waiver may not have been binding on the 6 owners who bought units in a horizontal property regime, none of the 6 objected to the change in operation. In fact, one owner, Mr. Patterson sent an email to Condominium Concepts dated December 12, 2014 complaining about the sudden imposition of dues when no Association or Condominium regime had ever been created. (Exhibit 1, December 12, 2014 Patterson email).

The affidavit of Alan Kahn, a member of VAS Condominiums, LLC and VAS Retail, LLC is submitted in support of this position. (Exhibit 2, Affidavit of Alan Kahn).

What is certain is that the owner of the 162 unsold units and Wells Fargo could waive the existence of a horizontal property regime and in essence did so. *See* South Carolina Code § 27-31-130.

What is also certain is that Clarendon did not exist as an entity related to the project until November 2, 2009, after the changed use of the 4 buildings had been agreed to and implemented. Clarendon does not have the right to object to these actions and ask the Court to disregard all of the evidence of the construction and use as an apartment complex, and the evidence of the owner and lender agreeing to disregard or waive the prior conveyance into a regime.

The eight retail units were owned by VAS Retail, LLC and the 154 residential units were owned by VAS Condominium, LLC. These units were owned by a single owner and never "separate owners of individual units."  None of these 162 units were deeded out of the Regime creating condominium ownership. The buildings at issue are apartments, not condominiums.

5

## **WHAT DOES "NEW" MEAN?**

Clarendon drafted the endorsement, and chose not to define "new" and therefore Clarendon will have to accept the most insured friendly interpretation. Its assertion that "new" means all work performed prior to a certificate of occupancy, however far back in the past the CO was issued, is a too late attempt to come up with a meaning that supports a denial of coverage. Logically, "new" in the endorsement should be interpreted consistent with the policy and the policy period.

Clarendon issued a "new" policy on November 2, 2009. Policies prior to that date were "old" policies. This "new" policy imposed "new" terms and conditions, and insured "new risks" that occurred during the "new" policy period. Clarendon defined its policies and specifically covered damages that occurred in the "new" policy period.[2] Damages occurring in prior policy periods of other carriers were already not covered. Clarendon collected a "new" premium in the amount of $25,500. For the next two years it issued two "new" renewal policies, with additional premiums paid.

Clarendon, by asking that "new" be defined as work occurring at any time prior to the issuance of a certificate of occupancy in September 2009, seeks to establish a "new" hidden exclusion for completed operations coverage represented to exist in the amount of $2,000,000 for each of the 3 policy years.

The endorsement is a "new" exclusion that did not exist in the prior policy years. It is "new" in this policy year. The endorsement should be construed consistent with the Declarations page and $2,000,000 in completed operations coverage represented to exist.

---

[2] [ECF 179] Big Time's Memorandum in Support of Motion for Partial Summary Judgment, Exhibit 1, CGL coverage form, p.1 of 16, paragraphs b(1) and (2).

It is absurd to suggest the word "new" in this endorsement would not be interpreted in relation to the policy year. The exclusion is limited to a condominium project started "new" in the first, second or third Clarendon policy period.

It is improper to have two possible interpretations and the interpretation that is the least inclusive, is the most exclusive, and the least insured friendly, chosen over an interpretation that is inclusive and logically fits into the overall scheme of the policies. Court opinions universally require the most inclusive meaning.

Clarendon asserts that the Condominium and Townhouse Exclusion applies despite these facts:

1)  There are no townhouses;

2)  There are no units that meet the legal requirements of condominium ownership;

3)  There are no separate owners of individual units;

4)  The construction of the 4 buildings at issue is old construction when the dates construction was performed is compared to the Clarendon policy periods;

5)  The 162 units from the conclusion of construction through the end of the three Clarendon policies were a single owner apartment complex;

6)  The 8 commercial units were not residential and the exclusion refers only to residential units. These units are not excluded no matter what conclusion is arrived at as to the words used in this exclusion. Clarendon had a duty to defend all claims based on the existence of these 8 commercial units alone; and

7)  All of these units were a commercial property to the Owner. None of the Defendants in the underlying case are residents at the units. Buyers purchase for a residence. The developer sold the units for a return on investment. Big Time worked on a commercial project and this exclusion does not apply for that reason.

7

## SUBCONTRACTORS WARRANTY

The cases cited by Clarendon consider the insureds obligations and the insurers rights where the subcontractor does or does not require its subs to obtain coverage in the same policy year the insurer imposes the requirements of the Subcontractor Warranty endorsement.

In this instance, Clarendon is attempting to deny coverage when the claimed breach, the failure to require A&R Stone to have liability coverage, occurred before Clarendon's first policy was issued. Clarendon cannot claim a breach of its policy requirements by conduct before the policy was issued and the endorsement became effective and before Big Time ever saw the policy or these conditions. The endorsement requires any such insurance *must be maintained in-force during the term of the work performed by such subcontractor.* The term of the work ended in September 2009. Clarendon's first policy incepted on November 2, 2009.

Big Time cannot have breached a policy condition precedent in a non-existent policy. It cannot have known to obtain insurance on a subcontractor whose term of work expired before the Clarendon Policy.

## PRE-EXISTING INJURY

Clarendon contends the Pre-existing Injury endorsement acts to extinguish all coverage for any occurrence and damage caused. Clarendon asserts that this endorsement excludes all coverage for any occurrence that first begins prior to the inception date of the policy even if damage continues to occur during Clarendon's policy period. Clarendon asserts that coverage is therefore excluded under all three policies. It asserts a denial of all coverage even though the occurrence and the resulting damage relied on by Clarendon was unknown by all parties prior to the inception date of each policy. This directly contradicts the known loss language in the insurance agreement.[3]

---

[3] [ECF 179] Big Time's Memorandum in Support of Motion for Partial Summary Judgment, Exhibit 1, CGL coverage form, insuring agreement, p. 1 of 16

8

Excluding damage that occurred during each of the policy periods is fundamentally at odds with the structure of the policy as interpreted by South Carolina opinions. The circumstances described in this endorsement constitute progressive damage that occurred over several and successive policy periods without the knowledge of the insured, Big Time. Nothing in the insuring clause, or the 16 pages of definitions and exclusions, precludes coverage. The reason this attempt fails are described in Big Time's Motion for Partial Summary Judgment and Memorandum in Support [ECF 179].

There is another more fundamental reason to find that coverage granted in the CGL coverage form is not excluded by the endorsement. The reason is that Clarendon's 30(B)(6) designee testified that the intended purpose of this endorsement is to preclude assessment of damages occurring prior to the Clarendon policy period and to insure Clarendon only pays for damages that occurred in the policy period. Clarendon however attempts to use this endorsement to preclude all coverage within the three policy periods despite Clarendon's testimony that it operates only to exclude damages occurring prior to its policy period. Clarendon's representative says this endorsement acts to limit Clarendon's responsibility to damages occurring during Clarendon's policy period. South Carolina law is consistent with this intent, and defines the damages assessed against any policy to be the damages that occur during that policy period. Excerpts from the 30(B)(6) deposition of Clarendon are attached as Exhibit 3 to this memorandum. The entire 30(B)(6) deposition transcript of Clarendon is included in the record as Exhibit 24 to Big Time's Motion for Partial Summary Judgment and Memorandum in Support [ECF 179].

Clarendon's witness had multiple opportunities to assert the pre-existing Injury endorsement was intended to preclude coverage for damages occurring during the policy period but declined to do so. This endorsement therefore only precludes damage occurring before the

initial policy period includes damages occurring during the policy period, and does not serve to deny any coverage or a duty to defend.

### **CLARENDON'S DUTY TO DEFEND BASED ON THE ALLEGATIONS OF THE PLEADING ASSERTING CLAIMS AGAINST BIG TIME**

The allegations of the Second Amended Complaint (submitted as Exhibit B to ECF 59, Clarendon's Request for Judicial Notice) are the base line for determining the duty to defend. If there is any possibility any of the allegations if proven will be covered, then there is a duty to defend.

Clarendon in its memorandum in support of its motion for summary judgment, [ECF 177] at pages 7 and 8, describes the follow allegations in the Second Amended Complaint:

> *27.    Upon information and belief, Defendants MB Kahn Construction, Co., Inc.; Kahn Development Company, Inc.; Village at Sandhill, LLC; and VAS Condominium, LLC; (hereinafter collectively referred to as the "Kahn Defendants") were, at all times relevant hereto, engaged in business in Richland County, South Carolina by for the purpose of owning, maintaining, marketing, leasing, repairing, and offering commercial and residential condominiums for sale to the public, as well as offering residential apartments and commercial units for rent and sale to the public including, but not limited to, projects known as Promenade at Sandhill, Village at Sandhill Condominiums, and/or the Residences at Sandhill, all within the residential and commercial project located in Richland County, South Carolina known as the "Village at Sandhill," which is the subject of this litigation <u>(this residential and commercial apartment and condominium project shall hereafter be referred to as the "Project").</u>*
>
> * * *
>
> *33.    The Defendants listed above including…<u>Big Time Plastering…Adolfo Rodriguez….Rodriguez,</u> (hereafter referred to collectively as the "Contractor*

10

> *Defendants") provided labor, materials, goods, professional services and other services and consultation associated with the original construction of the Project, and the work of each of these defendants was deficient and defective and resulted in damages to the Plaintiff as set forth below.*
>
> \* \* \*
>
> *56. <u>At the time these units were offered for sale and placed into the stream of commerce by these Defendants, the units contained numerous defects</u> and/or property damage which has been recently and is currently being discovered by Plaintiff, all as a direct and proximate result of an investigation initiated by Plaintiff, as a direct and proximate result of defects and deficiencies heretofore hidden and concealed through the acts and omissions of these Defendants.*
>
> \* \* \*
>
> *60.     <u>The Plaintiff suffered damages and injuries when these Defendants put these units into the stream of commerce and continue to be damaged and injured through the date of this filing.</u>*

[Emphasis added].

These allegations, and others in the referenced pleading, advise Clarendon of its duty to defend.

Paragraph 27 states that the project includes "residential apartments and commercial units for rent and sale." This allegation establishes damage to units unaffected by the new condominium endorsement.

 Paragraph 27 refers to "this residential and commercial apartment and condominium project." The new condominium endorsement does not affect commercial property.

Paragraph 33 references Big Time's subcontractor, and Clarendon had knowledge of the allegations that the work was subcontracted.

Paragraph 56 and 60 alleges there was damage from the conclusion of construction, and Clarendon upon receipt of the pleadings was on notice that damage may have occurred after its initial policy.

Based on these allegations, Clarendon had knowledge of circumstances that would have notified Clarendon to consider the Subcontractors warranty and preexisting injury.   Clarendon should be estopped to raise these endorsements by omitting them from the initial and second denial letter.

## CONCLUSION

Based the exhibits and memorandum filed in support of Big Time's Motion for Summary Judgment, and the arguments and exhibits submit herein, Big Time's motions should be granted and Clarendon's Motions denied.


|  |  |
|---|---|
| s/Henry W. Brown | |
| Henry W. Brown | Fed ID No. 1516 |
| John W. Davidson | Fed ID No. 7369 |

Nexsen Pruet, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC  29202
PHONE:  803.771.8900
FACSIMILE:  803.253.8277
HBrown@nexsenpruet.com
jdavidson@nexsenpruet.com

*Attorneys for Plaintiff, Big Time Plastering, Inc.*

April 30, 2021

12